UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEANNETE THRASHER,                        Case No. 20-12821

                         Plaintiff,        Terrence G. Berg
v.                                          United States District Judge

COMMISSIONER OF SOCIAL                      Curtis Ivy, Jr.
SECURITY,                                   United States Magistrate Judge

                         Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 13, 14)**

Plaintiff Jeannete Thrasher brings this action pursuant to 42 U.S.C. § 405(g),
challenging the final decision of Defendant Commissioner of Social Security
("Commissioner") denying her applications for Disability Insurance Benefits and
Supplemental Security Income under the Social Security Act.  This matter is before
the United States Magistrate Judge for a Report and Recommendation on
Plaintiff's motion for summary judgment (ECF No. 13), the Commissioner's cross-
motion for summary judgment (ECF No. 14), Plaintiff's reply (ECF No. 15) and
the administrative record (ECF No.11).

For the reasons below, it is **RECOMMENDED** that the Court **DENY**
Plaintiff's motion for summary judgment (ECF No. 13), **GRANT** Defendant's

motion for summary judgment (ECF No. 14), and **AFFIRM** the Commissioner's decision.

## I.    DISCUSSION

### A.    Background and Administrative History

Plaintiff alleges her disability began on August 1, 2016, at the age of 50. (ECF No. 11, PageID.184).  On November 16, 2016, she applied for disability insurance benefits and supplemental security income.  (*Id.*).  In her disability report, she listed ailments which diminished her ability to work.  The ailments included: severe depression, PTSD, distress syndrome, headaches, and migraines. (*Id*. at PageID.430).  Her application was denied on March 9, 2017.  (*Id.* at PageID.184).

Following the denial, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  After a hearing, the ALJ denied Plaintiff's applications.  (*Id.* at PageID.184-92).  The Appeals Council remanded her case to the ALJ for a second hearing and determination.  (*Id.* at PageID.68).  On February 26, 2020, ALJ Laura Speck Havens held a hearing, at which Plaintiff and a vocational expert testified. (*Id.* at PageID.89-106).  On March 5, 2020, the ALJ issued an opinion which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at PageID.68-78).  Plaintiff later submitted a request for review of the hearing decision.  On August 27, 2020, the Appeals Council denied

Plaintiff's request for review.  (*Id.* at PageID.47).  Thus, the ALJ's decision

became the Commissioner's final decision.

Plaintiff timely commenced the instant action on October 21, 2020.

### B.     Plaintiff's Medical History

Plaintiff's application for disability benefits is largely based on her mental

impairments of depression and anxiety.  She treated her mental impairments with

medication and therapy, with varying degrees of purported efficacy.  The details of

her treatment are addressed below as necessary in the analysis.  Plaintiff's alleged

physical impairments of migraines, heart palpitations, and gastrointestinal distress

are, according to Plaintiff, related to her mental impairments.  She also alleged

unrelated neck pain.

### C.     The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since August 1, 2016, the alleged onset date.  (ECF No.

11, PageID.70).  At **Step 2**, the ALJ found that Plaintiff had the following severe

impairments: depression, posttraumatic stress disorder, and anxiety.  (*Id.*).  At **Step

3**, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed

impairments.  (*Id.* at PageID.71-72).  **Between Steps 3 and 4** of the sequential

process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and

determined that Plaintiff had the RFC:

> to perform a full range of work at all exertional levels but
> with the following nonexertional limitations: She can
> understand, remember and carry out simple job
> instructions with occasional interaction with co-workers
> and supervisors, and no interaction with the public.

(*Id.* at PageID.73-76).  At **Step 4**, the ALJ determined that Plaintiff was unable to

perform any past relevant work.  (*Id.* at PageiD.76).  At **Step 5**, considering

Plaintiff's age, education, work experience, and RFC, the ALJ determined there

were existing jobs in significant numbers within the national economy that Plaintiff

could perform, such as laboratory equipment cleaner, janitor, and salvage laborer.

(*Id.* at PageID.76-77).  The ALJ therefore concluded that Plaintiff had not been

under a disability, as defined in the Social Security Act, since August 1, 2016,

through the date of the decision.

### D.    Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than 12 months."  42

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant
can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. §§ 404.1545(a),
416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the

Commissioner is to consider, in sequence, whether the claimant: (1) worked during

the alleged period of disability; (2) has a severe impairment; (3) has an impairment

that meets or equals the requirements of an impairment listed in the regulations; (4)

can return to past relevant work; and (5) if not, whether he or she can perform

other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[2]  The

Plaintiff has the burden of proof at steps one through four, but the burden shifts to

the Commissioner at step five to demonstrate that there is work available in the

national economy the claimant can perform.  *Walters v. Comm'r of Soc. Sec.*, 127

F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the

burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing

*Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    Analysis

Plaintiff brings three arguments in this appeal: (1) the ALJ did not accurately describe the evidence in support of the Step Three "paragraph B" decision, (2) the ALJ erred in his evaluation of the opinion evidence, and (3) the ALJ neglected to address Plaintiff's physical manifestations of her mental impairments.[3]  The Commissioner argues (1) the ALJ did not improperly rely on certain evidence at Step Three, (2) the ALJ properly weighed the opinion evidence, or any error was harmless, and (3) there was no error with the regard to the physical impairments because Plaintiff did not establish any work-related limitations from the impairments and they do not meet the twelve-month durational requirement.

### a.    Step Three "Paragraph B" Analysis

---

[3] Plaintiff did not cite any statutory or case law in support of these arguments.  The failure to engage with the applicable laws is troubling and borders on a waiver of her arguments.  It is not enough to assert that the ALJ erred and provide string citations to record evidence.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citations omitted).

The ALJ considered the "paragraph B" criteria of listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma and stressor related disorders).  The paragraph B criteria for these listings provides the functional criteria assessed to evaluate how mental impairments limit a claimant's functioning.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The criteria are: the ability to understand, remember, or apply information; to interact with others; to concentrate, persist, or maintain pace ("CPP"); and to adapt or manage oneself.  To satisfy paragraph B, the claimant's mental impairments must result in an "extreme" limitation in one[4] or a "marked" limitation[5] in two of the four areas.  The ALJ found that Plaintiff has moderate limitations in understanding, remembering, or applying information; interacting with others; and adapting or managing herself.  She found Plaintiff has mild limitation in CPP.[6]  (ECF No. 11, PageID.71-72).  In the view of the undersigned, the ALJ cited substantial evidence in support of the paragraph B determinations.

The area of understanding, remembering, or applying information refers to the abilities to learn, recall, and use information to perform work.  Examples

---

[4] An extreme limitation means the claimant is unable to function in the area independently, appropriately, effectively, and on a sustained basis.

[5] A marked limitation means the ability to function in the area independently, appropriately, effectively, and on a sustained basis is seriously limited.

[6] A moderate limitation means the ability to function independently, appropriately, effectively, and on a sustained basis is fair.  A mild limitation means the claimant is slightly limited.

provided by the Social Security Administration include following one- or two-step instructions to carry out a task, asking and answering questions and providing explanations, and using reason and judgment to make work-related decisions. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The ALJ explained that he found moderate limitation here because Plaintiff reported that she could prepare microwaved meals, go to the store, take public transportation, drive, watch television, and attend counseling appointments. These activities require a person to perform sequenced steps. The ALJ also noted that on examination she was able to provide information about her health, follow instructions on testing, and respond to questions from healthcare providers. (*See, e.g.*, ECF No. 11, PageID.560-61, where Plaintiff provided information about her health, employment, and social history). She also demonstrated compliance with prescribed treatment, which again shows her ability to complete multi-step tasks. (ECF No. 11, PageID.71).

Plaintiff challenges the ALJ's reliance on her activities. As to her ability to cook microwaved meals, take public transportation, or drive, the ALJ should have considered that cooking a microwaved meal only takes minutes, she no longer drives, and that she rarely takes public transportation. In her reply brief, she contends that how often she engages in these activities is material, but she cites no authority in support of the position. (ECF No. 15, PageID.1109). The frequency or duration of these activities aside, she is capable of performing them. The

paragraph B criteria ask only whether the claimant is able to learn, recall, and use information to perform tasks.  Her activities, even if not performed for eight hours a day, support the ALJ's position that she is able to learn, recall, and use information to perform tasks.

Plaintiff also challenges the ALJ's reliance on her compliance with treatment.  She argues that her compliance detracts from this area because her treating psychologist opined that Plaintiff's mental impairments limit her ability to work despite her compliance with medication.  But again, the question answered here is whether Plaintiff is capable of understanding, remembering, or applying information.  Her compliance with treatment, including attending appointments and taking medication daily as prescribed, demonstrates her abilities.

The "interacting with others" area of mental functioning refers to the ability to relate with co-workers, supervisors, and the public.  Examples of functioning include cooperating with others, understanding or responding to social cues, asking for help when needed, and starting or sustaining a conversation.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The ALJ cited substantial evidence in support of the determination that Plaintiff has some limitation in this area.  To support finding moderate limitation in interacting with others, the ALJ cited Plaintiff's statement that has no difficulty getting along with others, but she does not talk as much anymore, sometimes going a month or longer without talking to others.  She also

10

stated she feels intimidated by authority figures. But still, Plaintiff reported the ability to shop, taking public transportation, and attend appointments—activities that require interacting with others. She consistently interacted well with healthcare staff and built good rapport with providers. Finally, the ALJ noted that she responded appropriately to questions and imaginary situations, which required social judgment and knowledge of norms. (ECF No. 11, PageID.71).

The record indeed shows Plaintiff's ability to get along with others, in this context specifically it shows the ability to get along with providers, both those with whom she is familiar and those who are new to her. For example, during October 2018 she presented to a physician for evaluation of fecal incontinence. In the assessment, the physician described Plaintiff as "very pleasant." (ECF No. 11, PageID.650). She had appropriate mood and affect at her December 2017 doctor visit to establish a primary care treating relationship with a new doctor. (*Id.* at PageID.641). She had normal mood and affect at a January 2020 urgent care visit for shoulder and back pain.[7] (*Id.* at PageID.692). These examples also show she is capable of asking for help when needed—she sought a new doctor or specialist care for problems. In addition, her treating doctor's notes consistently document

---

[7] In reviewing an ALJ's decision for substantial evidence, the court "may look to any evidence in the record, regardless of whether it has been cited by the ALJ." *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 396 (6th Cir. 2014) (internal quotations omitted).

fair to good judgment and insight.  (*See id.* at PageID.526, 530, 541, 614, 620, 790, 811, 814).  There are no notations of uncooperative behavior.

Plaintiff points to a panic attack at a plasma donation center and mental status examinations showing depressed, anxious, stressed, or dysphoric mood as evidence that the ALJ is wrong here.  (ECF No. 13, PageID.1073).  She asserts that this evidence shows significant signs and symptoms that support greater limitation in her activities of daily living, yet the ALJ did not "conduct a fair analysis of the record taken as a whole."  (*Id.*).  The undersigned disagrees.  First, the ALJ discussed Plaintiff's panic attacks and her testimony that symptoms included difficulty breathing and erratic heartrate.  (ECF No. 11, PageID.73-74).  Second, while the ALJ did not expressly discuss the notations of anxious or depressed mood in mental status exams, the ALJ expressly mentioned the mental status examinations that included those findings.  (*See id.* at PageID.74, citing mental status examinations at therapy sessions throughout 2017).  Because the ALJ cited and discussed treatment records including positive findings on mental status examination (in the same paragraph as the negative findings she discussed), the undersigned can conclude that he considered all the evidence in the treatment records.  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting *Loral Def Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)) ("[I]t is well settled that '[a]n ALJ can consider all the evidence without

directly addressing in his written decision every piece of evidence submitted by a party.'").

The ALJ found mild limitation in Plaintiff's ability to concentrate, persist, or maintain pace because (1) Plaintiff reported driving, preparing microwaved meals, watching television, managing money, and attending counseling, (2) treatment records did not indicate problems with distractibility, (3) the record does not show an inability to complete testing that assesses concentration and attention, and (4) she demonstrated little difficulty concentrating at the hearing before the ALJ. (ECF No. 11, PageID.72).  This area refers to the ability to focus attention on work activities and stay on-task at a sustained rate.  Examples include starting and performing tasks the claimant knows how to do, working at an appropriate rate or pace, and sustaining an ordinary routine and regular attendance at work.

Plaintiff argues, again, that her reported activities were not undertaken often, so they do not establish an ability to concentrate at a sustained rate.  As discussed above, that Plaintiff is capable of performing these activities supports the ALJ's decision that she can concentrate or persist long enough to complete them.  But even if the citation to her activities does not support the ALJ's conclusions, the other evidence (or lack of evidence of problems in this area) cited by the ALJ does—especially treatment notes recording the ability to concentrate and maintain focus.  Plaintiff cites five treatment records that note racing thoughts, difficulty

concentrating, and problems with memory, focus, and distractibility that she asserts the ALJ did not address and that support greater limitation.  (ECF No. 13, PageID.1073-74).  But these five records do not seriously detract from the evidence on which the ALJ relies because they all are Plaintiff's subjective complaints that day.  (ECF No. 11, PageID.527, 619, 637, 839, 999).  The ALJ found Plaintiff's subjective complaints not entirely consistent with the evidence, a finding that the Plaintiff does not challenge.[8]  The objective mental status examinations, on the other hand, consistently document no problems with recent and remote memory, nor are there observations from a trained mental health professional noting issues with concentration.  (*See id.* at PageID.526, 530, 541, 614, 620, 790, 811, 814).  Aside from the five occasions when Plaintiff reported racing thoughts or problems with focusing, there is no other indication in the record that Plaintiff has problems in this area that limit her ability to function, other than her treating therapists' opinion which the ALJ properly discounted, as discussed more fully below.

Finally, the ALJ cited (1) Plaintiff's assertion that she had no difficulty with personal care, (2) she lived alone in an apartment for some time, (3) she reported feeling nervous, sad, and hopeless at times, (4) but also exhibited appropriate mood

---

[8] As mentioned above, Plaintiff discussed the law governing the ALJ's treatment of subjective complaints, but she did not bring forth argument on this ALJ's treatment of her subjective complaints.

and affect on occasions and appropriate hygiene to support moderate limitation in adapting or managing oneself.  (ECF No. 11, pageID.72).  This area looks at the claimant's ability to regulate emotions, control behavior, and maintain well-being in a work setting.  Examples include responding to demands, adapting to changes, managing psychologically based symptoms, and maintaining personal hygiene and attire appropriate to a work setting.

Plaintiff contends that her report once that she feels she cannot care of her own needs and has trouble asking for help, "[t]aken together as a whole" with the record, are signs ignored by the ALJ that support greater limitation.  (ECF No. 13, PageID.1074).  The single report that Plaintiff felt she could not care for her own needs does not establish that she is more limited in this area, considering the rest of the record establishes that she took care of herself without assistance from others.  Further, though Plaintiff sometimes reported that she thought about being dead, on each occasion she also explained that she did not have suicidal ideation, that she would not kill herself.  (*See, e.g.*, ECF No. 11, PageID.620, 623, 784).  The occasional reports about thinking about death do not render the ALJ's decision unsupported.

The ALJ marshaled substantial evidence in support of his decision. Treatment records consistently noted that Plaintiff was dressed appropriately or had good hygiene, which demonstrates she can manage herself.  As the ALJ noted,

Plaintiff discussed feeling anxious around people or having panic attacks, but it does not appear she suffered a panic attack each time she was in public or around people at home.  There is also no evidence or suggestion that Plaintiff relied on others to get through a day, that she could not care for herself independent of others.  And as noted previously, at times she was found to have good or normal mood and affect.  So in whole, the ALJ's decision is supported by substantial evidence.

At Step Three and elsewhere in the ALJ's decision, the ALJ gave weight to the examining and non-examining psychological consultants' opinions.  These opinions support the ALJ's paragraph B conclusions, and in some areas the ALJ found Plaintiff more limited than the consultant.  Dr. D'Ambrosio, who evaluated Plaintiff in person, noted that Plaintiff was able to understand simple instructions during the examination and exhibited minimal difficulty with memory, she exhibited no difficulty carrying out short and simple instructions, because of nervousness Plaintiff would have mild difficulties relating to the public, and because Plaintiff said she could drive independently, manager her own finances, and cook independently, Dr. D'Ambrosio concluded Plaintiff could likely manage work pressures without significant difficulties.  (ECF No. 11, PageID.567).

In all, the undersigned views Plaintiff's arguments on the paragraph B determination to be a request for the Court to reweigh the evidence, which we

cannot do.  *See Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1074 (6th Cir. 2013) (internal quotations and citations omitted) ("Here, the [plaintiff] asks us to reweigh the evidence and substitute our judgment for that of the ALJ.  We cannot do so. Even if we would have taken a different view of the evidence were we the trier of facts, we must affirm the ALJ's reasonable interpretation.").  She pointed to evidence in support of her position, and argued that the evidence essentially negated or voided the evidence cited by the ALJ.  But even if the evidence she cites is substantial evidence, because the ALJ marshaled substantial evidence in support of her determination, it should be affirmed.

    b.    Evaluation of Opinion Evidence

    The ALJ found non-examining consultative physician Dr. Eblen and psychiatrist Dr. Goldberg's opinions persuasive, but gave Plaintiff's treating psychologist Dr. Diez de Pinos's three opinions little or no weight.

    The ALJ must balance six factors to evaluate every medical opinion.  20 C.F.R. § 404.1527(c).  These factors include: (1) whether the source examined the claimant; (2) treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; (6) and any other factors.  *Id.*  When, as here, a claim was filed before March 27, 2017, the treating physician rule applies.  An ALJ must give controlling weight to the opinion of a treating physician if: "(1) the opinion is

'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and (2) the opinion 'is not inconsistent with the other substantial evidence in [the]case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527)).  This applies only when the opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Hum. Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991).  If the ALJ gives less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.  The reasons must be "'supported by the evidence in the case record, and … sufficiently specific to make clear … the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart*, 710 F.3d at 376 (citations omitted).  This "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Plaintiff does not argue that the ALJ violated the treating physician rule, per se.  Rather, she posits that the ALJ was incorrect in stating that Dr. Diez de Pinos's opinions strayed from his treatment records.  (ECF No. 13, PageID.1075).  Her argument is targeted at two of his three opinions.  The unchallenged opinion, dated October 11, 2017, was that Plaintiff was precluded from performing any employment.  (ECF No. 11, PageID.636).  The ALJ summarily dismissed this

opinion because a finding that the claimant is able to work or engage in regular work is an issue reserved to the Commissioner.  (*Id.* at PageID.75); *see* Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician") (citation omitted).

The two other opinions, one from August 2017 and the other from January 2020, are identical.  In both, Dr. Diez de Pinos offered opinions corresponding to the paragraph B areas discussed above.  In "understanding and memory," he concluded Plaintiff had mild limitation in understanding and remembering simple instructions, moderately severe limitation in remember locations and work-like procedures, and severe limitation in understanding and remembering detailed instructions. (*Id.* at PageID.569, 1046).  In "sustained concentration and persistence," he found Plaintiff severely limited in, for example, carrying out detailed instructions and maintaining attention and concentration without interruptions from psychologically based symptoms.  (*Id.* at PageID.570, 1047). He found her severely limited in asking simple questions and accepting instructions and responding appropriately to criticism from supervisors in social functioning.  (*Id.* at PageID.571, 1048).  In "adaptation," he opined she was severely limited in the ability to respond appropriately to changes in the workplace and travel to unfamiliar places or to use public transportation.  (*Id.*).  Additionally,

Dr. Diez de Pinos opined that Plaintiff would miss more than three days of work every month as a result of her impairments.  (*Id.* at PageID.572, 1049).

The ALJ afforded these opinions little weight because (1) they contain little explanation, (2) they are not entirely supported by treatment records showing intact memory, good judgment, and adequate control, and (3) they are inconsistent with Plaintiff's January 2017 statement that she uses public transportation.  (*Id.* at PageID.75).  As stated, Plaintiff argues these opinions align with the treatment records which show depressed, anxious, stressed, and dysphoric mood or affect and linear thought with passive thoughts of death.  (ECF No. 13, PageID.1076).

At most, Plaintiff points to evidence that supports her position, and that evidence may constitute substantial evidence.  But the ALJ's weight determination is also supported by substantial evidence.  Established above, while Plaintiff often presented with stressed, depressed, or dysphoric mood and affect, much of the time she had intact remote and recent memory, fair to good insight, judgment, and control, fair or normal attention or concentration, and she was alert and oriented. (ECF No. 11, PageID.526, 530, 541, 583, 614, 616, 620, 623, 784, 787-88, 790, 793, 796, 804, 807, 811, 815, 819-20, 822, 826, 835, 840-41 (same month as Dr. Diez de Pinos's last opinion)).  Her affect was not always depressed or dysphoric. At times it was congruent, or she was "brighter and calmer at the end" of the appointment.  (*See, e.g.*, *id.* at PageID.793, 796).  In any event, Plaintiff's

insistence that a depressed, stressed, or dysphoric mood and affect translate into the work-related restrictions Dr. Diez de Pinos opined is unsupported.  She cited no authority that these findings equate to limitations in understanding and memory, or concentration and attention.  The same can be said for the few occasions during which Plaintiff reported thoughts of death but no suicidal ideation.  Mental status findings such as intact memory, good judgment, and normal attention or alertness do not support Dr. Diez de Pinos' opinions that Plaintiff is severely limited in corresponding areas.  The ALJ's acknowledgment of this evidence as inconsistent with the opinions was not erroneous.

As to the psychological consultative opinions, the undersigned finds no error.  Drs. Eblen and Goldberg evaluated the record evidence on file up to March 2017.  They both determined that Plaintiff's impairments did not meet or medically equal a listed impairment, and in doing so, they evaluated the paragraph B criteria. (*Id.* at PageID.136-39, 174-79).  The ALJ either adopted those findings or found Plaintiff more limited than these doctors.  The ALJ found the opinions persuasive because they are consistent with the record showing Plaintiff received extensive mental health treatment.  (*Id.* at PageID.72).  Plaintiff's argument against this determination is that these doctors did not review evidence after March 2017, about three years removed from the ALJ's decision.  (ECF No. 13, PageID.1075).

It is well established that "an ALJ is permitted to rely on state agency physician's opinions to the same extent as she may rely on opinions from other sources." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274 (6th Cir. 2015). The ALJ can reasonably credit the opinion of a reviewing medical source, even though the source could not access the entire record, when, as here, the conclusion that the claimant retained the capacity to work was supported by the totality of the medical and vocational evidence in the record. *Glasgow v. Comm'r of Soc. Sec.*, 690 F. App'x 385, 387 (6th Cir. 2017) (citing *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (concluding that an ALJ may rely on a state agency physician's opinion that is not based on all of the medical evidence in the record if the ALJ takes into account any evidence that the physician did not consider)). Nor does an ALJ err by relying on an expert opinion that does not account for all the medical evidence "[a]bsent a clear showing that the new evidence renders the prior opinion untenable." *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 829 (6th Cir. 2009). This is because there will always be a gap between the time the reviewing doctor reviews gives their opinion and the ALJ's decision. "[T]he mere fact that a gap exists does not warrant the expense and delay of a judicial remand." *Id.*

Plaintiff has not shown how the evidence after March 2017 would change the reviewers' findings on the paragraph B criteria. As the paragraph B discussion

above shows, the ALJ's decision, which considered all the medical evidence, is supported by substantial evidence, including, but not limited to, Drs. Eblen's and Goldberg's opinions.  The evidence post-dating their opinions is not materially different from what they reviewed.  In sum, the mere fact that the ALJ relied in part on opinions which did not  reflect evidence after March 2017 is not cause for remand.

Plaintiff did not challenge the weight given to consultative examining psychologist Dr. D'Ambrosio, who opined on the paragraph B criteria.  She found Plaintiff had limitations, but was not so limited that she would not work.  The ALJ largely adopted those opinions, which also support Drs. Eblen and Goldberg's opinions.

c.    Physical Impairments

Plaintiff's final argument for remand is that the ALJ did not accurately evaluate Plaintiff's migraine evidence and ignored the evidence of heart palpitation, gastrointestinal distress, and neck pain.  She notes that the ALJ specifically ignored a March 2019 cervical spine MRI which showed moderate degenerative disc disease with moderate to severe foraminal stenosis.  (ECF No. 13, PageID.1076-77).

The Commissioner's first argument in response is well taken.  Plaintiff bears the burden of proving that her impairments limit her ability to work; she has not

met that burden.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)

("the burden of proof lies with the claimant at steps one through four of the

process, culminating with a claimant's proof that she cannot perform her past

relevant work").  This must be done with evidence of functional limitations, not

diagnoses alone.  *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir.

2014) ("disability is determined by the functional limitations imposed by a

condition, not the mere diagnosis of it.").

The ALJ addressed Plaintiff's migraine headaches at Step Two of the

sequential evaluation.  An impairment is deemed "severe" at step two if it

"significantly limits [the claimant's] physical or mental ability to do basic work

activities."  20 C.F.R. § 404.1520(c).  An impairment is not a severe impairment if

it is not expected to last for a continuous period of at least twelve months.  20

C.F.R. § 404.1509.  The ALJ stated there was "little, if any, evidence [her

migraines] satisfies the durational requirement or more than minimally impact the

claimant's ability to perform basic work activities."  (ECF No. 11, PageID.71).

Plaintiff's only challenge to this is to state that the ALJ did not accurately evaluate

her subjective symptoms of migraines.  She cites medical records documenting her

complaints of headaches or migraines.  For example, she presented to the

emergency department during May 2017 for a migraine headache that did not

subside using over-the-counter medication.  Her migraine was described as

"typical." She was administered a "migraine cocktail" which completely relieved her symptoms and she was discharged. (*Id.* at PageID.586-89). She did not cite evidence of functional limitations caused by her migraines or that the migraines are expected to occur for a continuous period of at least twelve months, she only cited documentation of her complaints.

As for her neck pain, other than describing the MRI and a CT scan of her cervical spine, she did not point to evidence of functional limitations. ALJs may not extract functional limitations from raw medical data, so it is no surprise the ALJ did not include in the RFC any limitations to account for the moderate to severe findings in the MRI. *See Ali v. Comm'r of Soc. Sec.*, 2017 WL 726665, at *11 (E.D. Mich. Jan. 20, 2017), *report and recommendation adopted*, 2017 WL 712899 (E.D. Mich. Feb. 23, 2017) ("Courts in this circuit have regularly noted that, while it is for the ALJ to weigh the medical evidence, ALJs are not qualified to interpret raw medical data, and may not 'play doctor.'"). Similarly, Plaintiff did not present evidence, nor did she argue here, that her heart palpitations and gastrointestinal distress limit her ability to work. She saw a cardiologist for the heart palpitations in October 2018, who noted that the echocardiogram was normal and that the palpitations were related to anxiety and panic attacks. (ECF No. 11, PageID.664). As discussed, the ALJ adequately addressed Plaintiff's mental impairments, including anxiety and panic attacks. During that same month she

presented to a specialist for complaints of fecal incontinence in relation to the gastrointestinal distress.  The physician ordered a colonoscopy, which came back negative, and gave her fiber supplements.  (*Id.* at PageID.651, 658).  The cardiac and gastroenterology findings do not, by themselves, establish functional limitations.  It was Plaintiff's burden to establish functional limitations.

### G.    Conclusion

Plaintiff has the burden of proof on her statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Plaintiff has not shown legal error that would upend the ALJ's decision.  For all these reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 13), **GRANT** Defendant's motion for summary judgment (ECF No. 14), and **AFFIRM** the Commissioner of Social Security's decision.

## II.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 2, 2022                    s/Curtis Ivy, Jr.
                                        Curtis Ivy, Jr.
                                        United States Magistrate Judge